**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DIONTA THOMPSON, | ) |
| | ) |
| Petitioner, | ) |
| | ) No. 09 C 07913 |
| v. | ) |
| | ) Judge John J. Tharp, Jr. |
| RICK HARRINGTON,[1] | ) |
| | ) |
| Respondent | ) |

**MEMORANDUM OPINION AND ORDER**

Dionta Thompson is imprisoned at the Menard Correctional Center, serving a 45-year sentence for a first-degree murder in which he was found to have shot the 17 year-old victim twice in the back during a quarrel about the affections of a young woman. He was convicted in 2003 after a bench trial in the Circuit Court of Cook County, and was sentenced to 20 years in prison with an additional 25-year enhancement for causing death by personally discharging a firearm in the commission of the crime. He now petitions for a writ of habeas corpus under 28 U.S.C. § 2254. In his *pro se* petition, Thompson raises eight possible grounds for granting habeas relief, most pertaining to his enhanced sentence and his attorneys' performance at trial and on appeal. For the reasons set forth below, the Court denies the petition for a writ of habeas corpus and declines to issue a certificate of appealability.

**FACTS**

In a federal habeas case initiated by a prisoner in custody pursuant to a state court proceeding, the factual findings of the state court are presumed to be correct unless there is clear

---

[1] The current warden of the Menard Correctional Center has been substituted for the original respondent, Donald Gaetz. See Fed. R. Civ. P. 25(d); Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts.

and convincing evidence to the contrary. 18 U.S.C. § 2254(e)(1); *Rever v. Acevedo*, 590 F.3d 533, 537 (7th Cir. 2010). Therefore, this Court relates the underlying facts as summarized by the Illinois Appellate Court in *People v. Thompson*, 821 N.E. 2d 664 (Ill. App. Ct. 2004), and discusses facts Thompson offers to controvert them only as relevant to address the claims presented in his petition.

On the night of September 28, 2001, 17-year-old Deon Fleming and his older cousin, Huell Lamont Collier, traveled to the Rockwell Gardens public housing complex.[2] According to Collier's testimony at trial, Collier and Fleming encountered Thompson, then 18, outside in a courtyard. The three talked briefly and shared some food; Thompson then entered the building while Collier and Fleming walked to a store to buy alcohol. When they returned, Fleming went inside to a party at his half-sister's ninth-floor apartment, while Collier remained in the hallway, talking to Thompson and another man. At some point, Fleming rejoined Collier and Thompson and drank with them. Soon, Fleming and Thompson were arguing and calling each other names, but Collier intervened and broke up the fight, which concerned "the affections of a young woman at the party," according to the appellate court. Collier then went with Fleming back to the store to buy more alcohol. In the meantime, Thompson left the party briefly to get a gun.

Upon leaving the store, Fleming returned inside the apartment building, while Collier stopped along the way to talk with friends. When someone yelled from a window above for Collier to "come get [Fleming]," Collier went upstairs to find Fleming and Thompson arguing again and "acting wild." As Collier attempted to come between the two, Fleming reached around and punched Thompson in the face, at which point Thompson pulled a gun and shot Fleming.

---

[2] The Rockwell Gardens complex was located in the East Garfield Park neighborhood of Chicago, in the area bounded by Madison Street on the north, Van Buren Street on the south, Western Avenue to the east, and Rockwell Street to the west. The complex has since been demolished and replaced with mixed income housing.

When Fleming fell to the floor, Thompson shot him a second time. Fleming later died as a result of his injuries.

After his arrest, Thompson was taken to local police headquarters and advised of his rights. Thompson then made several oral statements to two police detectives; he admitted to being involved in the confrontation with Fleming and shooting Fleming twice, stating that he saw Fleming reaching for a weapon. He later admitted that he made up this last part of the story in order to help his case. In a videotaped confession to an Assistant State's Attorney and one of the detectives, he stated that when Collier and Fleming returned from the store, they began to talk to him again, and when he tried to walk off, Collier grabbed him and wrestled him. When Thompson broke free, he saw Fleming coming toward him, and Thompson pulled out the gun, shot Fleming in the stomach, and then shot him again when as Fleming fell backward. The forensic evidence introduced at trial, however, showed Fleming sustained two gunshot wounds to the back, one on his left side and one on his right side, with both bullets traveling from back to front and slightly upwards, and several witnesses testified that Thompson fired the second shot while Fleming was face-down on the floor after having been hit by the first shot.

## PROCEDURAL HISTORY

Based on the forensic evidence and the eyewitness testimony at Thompson's bench trial, the judge rejected Thompson's defense that he acted in self-defense as well as the argument that the shooting was at most second-degree murder based on the mitigating factor that Thompson had an actual but unreasonable belief that he was acting in self-defense. The judge found Thompson guilty of first degree murder and further found that Thompson had personally discharged a firearm, causing death. The judge imposed a 20-year sentence for first degree murder and added a mandatory consecutive 25-year term based on the finding that "during the

commission of the offense, [Thompson] personally discharged a firearm that proximately caused great bodily harm, permanent disability, permanent disfigurement, or death to another person." *See* 730 ILCS 5/5-8-1(a)(1)(d)(iii).

Thompson raised four issues in his direct appeal: (1) his conviction should be reduced to second-degree murder because the evidence showed that he acted under a sudden and intense passion resulting from mutual combat; (2) the 25-year sentencing enhancement for discharging a firearm causing death to another person should be vacated because "another person" must be someone other than the victim; (3) the sentencing enhancement provision imposes additional punishment for an essential element of the crime and thus amounts to an unconstitutional "double enhancement"; and (4) the sentencing enhancement violates due process because it does not bear a reasonable relation to the state's interest in punishing the risk of firearm use during the commission of a crime. The appellate court addressed Thompson's arguments on the merits and rejected them all. Thompson then filed a petition for leave to appeal (PLA) with the Illinois Supreme Court, arguing that the sentencing provision is unconstitutionally vague, that it violates the double enhancement prohibition, and that it violates the Due Process and Proportionate Penalties Clauses of the Illinois Constitution. He then moved to file a supplemental PLA, claiming that his conviction should be reduced to second-degree murder based on the evidence of mutual combat. The Illinois Supreme Court allowed Thompson to file the supplemental PLA, but denied leave to appeal on all claims.

Thompson then filed a *pro se* petition for post-conviction relief in the Circuit Court of Cook County. In his petition he raised three claims: (1) appellate counsel provided ineffective assistance by not arguing that the crime was mitigated by Thompson's actual but unreasonable belief that he was acting in self-defense; (2) trial counsel provided ineffective assistance in

failing to call Thompson to testify, not allowing him to participate in the discovery process, not consulting him regarding witness testimony, and advising him to waive his right to a jury trial, which resulted in an unknowing and involuntary waiver; and (3) counsels' cumulative errors resulted in fundamentally unfair proceedings and influenced the outcome of his case. The post-conviction court concluded that all of these arguments were "frivolous and patently without merit." On appeal of the denial of his post-conviction petition, Thompson, through counsel, raised only one claim—that trial counsel provided ineffective assistance by not allowing him to testify. The appellate court reviewed the argument on its merits, affirmed the dismissal of the petition, and later denied a petition for rehearing. Thompson raised the same ineffective assistance claim in a PLA that the Illinois Supreme Court denied.

Thompson's petition for a writ of habeas corpus raises eight purportedly separate grounds for relief: (1) the evidence at trial did not establish the elements of first-degree murder beyond a reasonable doubt; (2) the 25-year enhancement is unconstitutionally vague; (3) the 25-year enhancement imposes additional punishment for an element of the crime; (4) the 25-year enhancement violates due process; (5) appellate counsel provided ineffective assistance on direct appeal; (6) trial counsel provided ineffective assistance in not allowing Thompson to testify; (7) trial counsel provided ineffective assistance in failing to consult with Thompson before trial; and (8) the cumulative effect of all these errors deprived Thompson of a fair trial and appeal. In its response, the State of Illinois argues that the petition must be denied because the claims are either procedurally defaulted, *see* 28 U.S.C. § 2254(b), not cognizable, *see id*. § 2254(a), or lacking in merit.

**DISCUSSION**

This case is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. AEDPA allows this Court to grant a petition for a writ of habeas corpus by a state prisoner only on the ground that he is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). In order for a writ to issue, a prisoner in custody pursuant to a judgment in state court must show that the state adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A decision by a state court is "contrary to" clearly established federal law if it applies a rule different from that established by the Supreme Court, or reaches a different outcome than that of the Supreme Court on a set of materially indistinguishable facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002); *McNary v. Lemke*, 708 F.3d 905, 913 (7th Cir. 2013). A state court engages in an "unreasonable application of" federal law if it identifies the correct legal standard articulated by the Supreme Court, but applies it in an unreasonable manner. *Williams v. Taylor*, 529 U.S. 362, 407 (2000). The decision must be "objectively unreasonable," and not simply incorrect or erroneous. *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003). Under the statute, courts must give "full effect" to state judgments that are consistent with federal law. *Williams*, 529 U.S. at 383. This means applying a deferential standard of review, under which state court rulings are given the benefit of the doubt. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

A court must construe a *pro se* petition liberally. *Ward v. Jenkins*, 613 F.3d 692, 697 (7th Cir. 2010). Nevertheless, the statutory requirements are clear, and as set forth more fully below,

several of the claims—grounds five, seven, and eight of the petition—cannot be considered because Thompson procedurally defaulted them in state court before attempting to raise them here. Other claims—grounds two, three, and four—are not cognizable on federal habeas review because they exclusively challenge the state courts' interpretations of state law. That leaves two claims for resolution on the merits—sufficiency of the evidence and ineffective assistance of trial with respect to Thompson's desire to testify; as to these claims, the state courts' rulings were neither unreasonable applications of Federal law nor unreasonable determinations of the facts in light of the evidence presented.

## I.      Procedural Default

Before a district court can consider habeas claims, the petitioner must comply with the statutory exhaustion requirement by presenting each claim in one full round of review in the state courts. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (holding that "a prisoner who fails to present his claims in a petition for discretionary review to a state court of last resort" has not properly exhausted his claims). Failure to exhaust available state remedies through one full round of review results in procedural default and forecloses federal review of the claim. *Id.*;*Mulero v. Thompson*, 668 F.3d 529, 535-36(7th Cir. 2012); *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir.2010).

The fifth ground of the petition asserts that Thompson received ineffective assistance of counsel on direct appeal, in violation of the Sixth Amendment. *See Strickland v. Washington*, 466 U.S. 668 (1984). In his petition for post-conviction relief, Thompson argued that appellate counsel unreasonably failed to raise the mitigating factor of actual but unreasonable belief in self-defense. Although that argument was made (unsuccessfully) at trial, on direct appeal counsel argued only for another statutory mitigating factor: "serious provocation," in that the crime was

the product of sudden and intense passion resulting from mutual combat.[3] *See* 720 ILCS 5/9-2(a)(1). The post-conviction court dismissed Thompson's ineffective assistance claim as frivolous and patently without merit. In the ensuing appeal, Thompson did not reprise his challenge to the effectiveness of appellate counsel, nor did he include it in his PLA before the Illinois Supreme Court. Therefore, he did not present his claim about appellate counsel for one full round of review in state court, and he therefore procedurally defaulted this claim. *See Boerckel*, 526 U.S. at 848; *White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999) (holding that the procedural default rule applies with equal force to state collateral review proceedings).

In grounds six and seven of the petition, Thompson argues that trial counsel was ineffective because he did not allow Thompson to testify on his own behalf at trial (ground six) and failed to share discovery materials with him or consult him about witnesses' testimony (ground seven). Thompson presented the first argument in his post-conviction petition, on appeal, and in his PLA to the Illinois Supreme Court, and it is discussed below on its merits. But he did not include the latter argument in his post-conviction appeal and PLA to the Illinois Supreme Court. Although a claim of ineffective assistance of counsel targets counsel's performance as a whole, the purpose of the procedural default rules "requires a party to present to the state court both facts and law on which he relies." *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007); *see McNary v. Lemke*, 708 F.3d 905, 919 (7th Cir. 2013) ("This exhaustion requirement includes raising both the broad claim [and] also the specific arguments and 'operative facts' within that claim."). "Thus, the failure to alert the state court to a complaint about one aspect of counsel's assistance will lead to a procedural default." *Stevens*, 489 F.3d at

---

[3] The choice would appear wise because these two mitigating factors, based on two different frames of mind, cannot be present simultaneously. *People v. Goolsby*, 70 Ill. App. 3d 832, 837, 388 N.E.2d 894, 898 (Ill. App. Ct. 1979); *People v. Chapman*, 49 Ill. App. 3d 553, 558, 364 N.E.2d 577, 581 (Ill. App. Ct. 1977).

894. Accordingly, this Court will not address the merits of the ineffective assistance of trial counsel claim to the extent it challenges a failure to share evidence and consult about witnesses; Thompson procedurally defaulted on that claim by failing to present that claim to the state court through one full round of review.

Next, ground eight of the petition alleges that Thompson "was deprived of effective assistance of counsel at trial and on appeal due to the cumulative effect of errors which denied defendant/petitioner due process of law." In his supporting briefs, however, Thompson makes a slightly different argument: that the totality of the errors (by counsel or otherwise) set forth in grounds one through seven of the petition cumulatively deprived Thompson of his "constitutional rights to due process and equal protection and rights guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments." Thus the exact nature of Thompson's claim is unclear. If he means to argue that counsels' cumulative errors add up to ineffective assistance even though none standing alone would warrant relief (*see, e.g.*, *Goodman v. Bertrand*, 467 F.3d 1022, 1030 (7th Cir. 2006)), the argument is defaulted because he presented it in his initial post-conviction petition but nowhere else. *Stevens*, 489 F.3d at 894. Moreover, success on such a claim, which essentially tips the scale of *Strickland*'s prejudice prong, would require that Thompson first establish individual unreasonable errors by counsel to combine, but as will be seen, he cannot. *See Yu Tian Li v. United States*, 648 F.3d 524, 533 (7th Cir. 2011). If ground eight is not another ineffective-assistance argument, but instead a request to add up the many different constitutional violations Thompson alleges into a meta-ground for relief, it still fails. This claim was never brought in state court, and in any event different constitutional violations do not accumulate for purposes of showing entitlement to relief; any one ground can show that a prisoner is in custody "in violation of the Constitution or laws or treaties of the United States."

Accordingly, the fifth, seventh, and eighth grounds for relief set forth in the petition are procedurally defaulted. And, although he recites the governing law, Thompson show any cause for the default and actual prejudice resulting from the constitutional violation, or that failure to consider the claim would result in a "fundamental miscarriage of justice." *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Gomez v. Jaimet*, 350 F.3d 673, 679 (7th Cir. 2003). Thompson does not suggest that any exception excuses his procedural default, and none is evident to the Court. Accordingly, the Court will not evaluate these three claims on their merits. *See Crockett v. Hulick*, 542 F.3d 1183, 1193 (2008).

## II.     Non-cognizable Claims

Section 2254 allows a writ to issue to a state prisoner in custody in violation of *federal* law; therefore, federal courts may not review a state court's resolution of state-law questions. 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2010) (granting certiorari); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). A review of Thompson's petition shows that the only arguments that he presented to the state courts—and thus exhausted—regarding his sentencing enhancement were challenges based upon Illinois law.

 In ground two of his petition, Thompson challenges the 25-year sentencing enhancement he received. Under 730 ILCS 5/5-8-1(a)(1)(d)(iii), an additional 25 years "shall be imposed" by the court if during the commission of the charged offense, "the person personally discharged a firearm that proximately caused . . . death to another person." Thompson first asserts that this provision is "unconstitutionally vague," but he develops a different argument: that "another person" must be someone other than the victim. Thus, his argument is not that the statute is vague—he insists there is only one reasonable interpretation—but that the provision did not apply to him because "there were no findings that a victim of the shooting, other than the murder

victim, suffered 'great bodily harm, permanent disability, permanent disfigurement, or death.'" In short, he says "there was no proper basis for the enhancement" because only the victim, not "another person," was harmed. Thus understood, Thompson's claim is not cognizable on federal habeas review as it presents solely a question of the meaning of the state statute. In his direct appeal, the Illinois Appellate Court deemed it "clear" that "another person" refers to "any person other than the one who personally discharged the firearm, rather than any person other than the victim." *Thompson*, 821 N.E. 2d at 674. This Court cannot review whether the state court properly interpreted state law in applying the sentencing enhancement to his crime (which is not to suggest that this Court believes that the state court's interpretation was erroneous).[4]

This leads to Thompson's claim in ground three of the petition: that the 25-year enhancement amounts to double punishment for an essential element of the crime. Thompson contends that he is being punished twice for killing Fleming, since causing Fleming's death is an essential element of murder as well as the basis for enhancing the sentence.

The prohibition on double enhancements is violated when a single factor is used "both as an element of a defendant's crime *and* as an aggravating factor justifying the imposition of a harsher sentence than might otherwise have been imposed." *People v. Gonzalez*, 600 N.E. 2d 1189, 1191 (Ill. 1992); *see People v. Siguenza-Brito*, 920 N.E.2d 233, 245 (Ill. 2009). The rule is a creature of Illinois law: "The general rule against double enhancement is merely a rule of construction established by this court, which arises from the presumption that the legislature considered the factors inherent in the offense in setting the initial penalty for that offense."

---

[4] The Illinois Supreme Court has flatly rejected Thompson's argument. *People v. Sharpe*, 839 N.E.2d 492, 521 (Ill. 2005) ("It is quite clear that the legislature intended the enhanced penalty to apply whenever the perpetrator by means of personal discharge of a firearm causes the requisite level of injury to someone other than *himself*.") (emphasis in original). It further rejected the argument that the provision is unconstitutionally vague.

*People v. Sharpe*, 839 N.E.2d 492, 530 (Ill. 2005); *see People v. Rissley*, 651 N.E.2d 133, 145 (Ill. 1995) (explaining that the issue of whether a provision creates a double enhancement is a matter of statutory construction). Indeed, the claim in Thompson's brief is couched in the language of Illinois state law and supported by state cases—although he omits reference to the case in which the Illinois Supreme Court held that this very provision is *not* an impermissible double-enhancement. *See Sharpe*, 839 N.E.2d at 530 (explaining that although the degree of harm required for the enhancement is also "inherent in the crime of murder," the enhancement, but not the murder statute "requires that the harm be caused *by the firearm*."). To the extent Thompson is simply challenging the state courts' determination that there was no double enhancement as a matter of statutory interpretation, his claim is not cognizable on federal habeas review. The federal court is not the place to remedy even an unreasonable application of state law by the state court—although nothing strikes this Court as unreasonable about the state court's interpretation of the enhancement provision. Thompson also refers, without developing any specific argument, to federal constitutional provisions—due process of law, equal protection, the Eighth Amendment—but he never presented the state courts with any argument that the enhancement violates the federal constitution.

In ground four, Thompson makes one final argument against his sentencing enhancement—that it violates due process and equal protection because it does not bear a "reasonable relationship to the public interest of punishing the risk that firearms pose to others when used in the commission of a murder." Here, Thompson expressly invokes the Illinois Constitution's due process and proportionate penalties clauses as the basis of his arguments, and fails to advance any argument under the federal Constitution, which renders them non-cognizable for purposes of this federal petition. Under the Illinois Constitution, a law violates

due process if it is not reasonably designed "to remedy the evils that the legislature has determined to be a threat to the public health, safety, and general welfare." *People v. Morris*, 554 N.E.2d 235, 236 (Ill. 1990). This is the standard that was articulated in Thompson's appellate brief, and it is the standard applied by the Illinois Appellate Court. It is not the role of this Court to question a state court's application of the state constitution. To the extent that Thompson's references to proportionality could be construed as an Eighth Amendment challenge, *see e.g., Solem v. Helm*, 463 U.S. 277, 288 (1983), he never made any such argument to the state courts, and, in any event, in the absence of significant mitigating factors, this Court would not conclude that a 45-year prison sentence for the murder of a 17-year-old is excessive for Eighth Amendment purposes.

## III.    Claims Reviewed on their Merits

### A.    Sufficiency of the Evidence

In ground one of his habeas petition, Thompson contends that the state failed to prove first-degree murder beyond a reasonable doubt because there was evidence of a mitigating factor, namely, that Thompson acted out of the "sudden and intense passion resulting from the serious provocation of mutual quarrel or combat." In general, a claim that the state did not prove every element beyond a reasonable doubt adequately sets forth a federal constitutional violation; as Thompson points out, the Supreme Court held in *Jackson v. Virginia*, 443 U.S. 307 (1979), that due process requires a state to prove every element of the charged offense beyond a reasonable doubt. *See id.* at 321 (explaining that "a state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt has stated a federal constitutional claim"). The state

contends, however, that Thompson's specific argument is premised on a misapprehension of state law and is really only a state-law claim.

Under Illinois law, after the state meets its initial burden of proving every element of first-degree murder beyond a reasonable doubt, the burden shifts to the defendant to prove the existence of any mitigating factors by a preponderance of the evidence. *See* 720 ILCS 5/9-2(c); *People v. Jeffries*, 646 N.E.2d 587, 593-594 (Ill. 1995). As the appellate court observed in Thompson's direct appeal, 821 N.E.2d at 669-70, the elements of first-degree and second-degree murder are the same;[5] second-degree murder is distinguished only by the presence of a mitigating factor. Illinois contends that because the *absence* of such a factor is not an element of first-degree murder, *see Jeffries,* 646 N.E.2d at 593-94., the federal due process principles set forth in *Jackson* do not apply to Thompson's argument. *See Patterson v. New York*, 432 U.S. 197, 210 (1977) (holding that the Due Process Clause does not require the state to disprove an affirmative defense that would reduce the charge of first-degree murder).

The state is correct that Thompson's real grievance is that the trial court failed to conclude that he met his burden to prove a mitigating factor by a preponderance of the evidence. But the conclusion that *Jackson* does not apply does not follow automatically. On Thompson's direct appeal, the appellate court, in the context of determining whether Thompson had waived the argument regarding serious provocation, recognized Thompson's argument as a sufficiency of the evidence challenge. The court explained that, although the burden shifts to the defendant to supply evidence of a mitigating factor, it ultimately shifts back to the state "to disprove any such mitigating factors." 821 N.E.2d at 670; *see* 720 ILCS 5/9-2(c) ("[T]he burden of proof

---

[5] Both crimes require proof that: (1) the defendant's actions resulted in the victim's death; and (2) the defendant knew his acts would result in the victim's death or had knowledge that his actions created a strong probability of death or great bodily injury to the victim. 720 ILCS 5/9-1, 9-2.

remains on the State to prove beyond a reasonable doubt each of the elements of first degree murder and, when appropriately raised, the absence of circumstances at the time of the killing that would justify or exonerate the killing"). The court concluded, therefore, "the question as to whether the evidence favoring mitigation shifted the burden to the State and, consequently, whether the evidence presented by the State was sufficient to overcome such mitigation" was a sufficiency of the evidence argument (which, accordingly, was not waived on direct appeal).

This Court will not second-guess the Illinois Appellate Court's interpretation of Thompson's argument as a challenge to the sufficiency of the evidence to convict him of first-degree murder. Therefore, under *Jackson,* Thompson claims a federal constitutional violation that is cognizable on habeas review. Although Thompson does not say so in his petition, the Court will construe his argument to assert that the state court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" under 28 U.S.C. § 2254(d)(2). Thus the Court inquires whether the state court's decision "rests upon fact-finding that ignores the clear and convincing weight of the evidence." *See Goudy v. Basinger*, 604 F.3d 394, 399-400 (7th Cir. 2010).

In Thompson's direct appeal, the parties disputed whether there had been "mutual combat" given that Thompson did not allege in his post-arrest statements that Fleming had hit him but other witnesses did. The Illinois Appellate Court concluded that there had been mutual combat leading to the first gunshot, but that Collier had then interceded to push Thompson away. The court appeared to suggest, quite reasonably, that given that intervening event, "mutual combat" did not mitigate Thompson's culpability for the second shot he fired while Fleming lay face down on the floor. The Court held, however, that even if it were to consider the second shot to have been fired during mutual combat, Thompson had failed to establish "adequate

provocation" in the form of "mutual quarrel or combat" because Thompson's response was "wholly disproportionate to the provocation." *Thompson*, 821 N.E. 2d at 590. The victim's provocation included, at most, angry words and a punch to Thompson's face; Thompson's reaction was to shoot twice, the second time while the victim was face-down on the ground. Thompson had no response to the state's argument regarding proportionality, and he presents none in his habeas petition. Given the evidence before the state court, this Court cannot conclude that its determination that "a rational trier of fact, viewing the evidence in its totality, could find that [Thompson's] retaliation was grossly disproportionate to the provocation," 861 N.E.2d at 590, was unfounded—a punch in the face does not make firing two shots into the back of a 17 year-old materially less culpable.

### B. Ineffective Assistance of Trial Counsel: Right to Testify

The other ground of Thompson's petition that asserts a federal constitutional violation and was fairly presented to the state courts is his claim (ground six) that his trial counsel was ineffective, in violation of the Sixth Amendment, because he did not call Thompson as a witness at trial. Specifically, Thompson says that he told his lawyer during trial that he wanted to testify to refute lying by a witness for the state, and his lawyer responded "okay" but never called Thompson to the witness stand. It is beyond question that a criminal defendant has a constitutional right, implicit in the Fifth, Sixth, and Fourteenth Amendments, to testify on his own behalf. *See Rock v. Arkansas*, 483 U.S. 44, 51-53 1987). And that is where Thompson focuses his arguments, devoting considerable space to arguing that counsel erred by not calling him to testify. However, at this stage of review, Thompson's task is more onerous than simply asserting that he wished to testify.

As an initial matter, the state correctly notes that Thompson does not adequately support his assertion that he wished to testify but was thwarted by his attorney. A "barebones assertion by a defendant, albeit made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It just is too facile a tactic to be allowed to succeed." *Underwood v. Clark*, 939 F.2d 473, 478 (7th Cir. 1991); *Thompson v. Battaglia*, 458 F.3d 614, 619 (7th Cir. 2006). The absence of appropriate affidavits caused the post-conviction court to decline to address the merits of the argument, and the Illinois Appellate Court agreed that Thompson's failure to file the proper affidavits did not comport with Illinois law. *See* 725 ILCS 5/122–2 (requiring petition to "have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached"); *People v. Delton*, 882 N.E. 2d 516, 522 (Ill. 2008) ("broad conclusory allegations of ineffective assistance of counsel," such as claim that counsel "fail[ed] to interview all possible witnesses," are "not allowed under the Act"). Nevertheless, that court opted to excuse Thompson's failure on the ground that it would have been exceedingly difficult for him to obtain an affidavit from his trial counsel, and that was the only statement besides his own that he could have possibly furnished. In this court, Thompson has not provided a sworn statement, although his petition is verified. But the record contains sufficient material, including Thompson's state-court affidavit, from which this Court can understand Thompson's argument and its factual underpinnings, and therefore it will review the Illinois Appellate Court's decision on the merits.[6]

The claim fails. In his post-conviction appeal, the Illinois Appellate Court appropriately applied the two-part inquiry set forth in *Strickland v. Washington*: whether counsel's conduct fell below an objective standard of reasonableness, and whether counsel's error so prejudiced the

---

[6] But Thompson has not demonstrated entitlement to an evidentiary hearing, as explained further below.

defendant as to deprive him of a fair trial. 466 U.S. 668 (1984). The "prejudice" prong requires a defendant to show there was "reasonability probability" that, but for counsel's errors, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 694; *Monroe v. Davis*, 712 F.3d 1106, 1116 (7th Cir. 2013); *Johnson v. United States*, 604 F.3d 1016, 1019 (7th Cir. 2010). The appellate court concluded that, even assuming that counsel erroneously prevented Thompson from testifying, there was no prejudice because of the "overwhelming evidence against defendant." The court cited (1) the testimony of the two eyewitnesses who testified about the fight between Thompson and Fleming that culminated in Thompson shooting Fleming twice, the second time while Fleming was lying on the ground; (2) Thompson's statements to police; (3) Thompson's videotaped confession; and (4) the forensic pathology report showing that Fleming was shot twice in the back. The court concluded that the testimony Thompson said he would have offered—that he acted in self-defense—could not have overcome that evidence, particularly where the judge (recall that Thompson had a bench trial) "considered defendant's account of the events in his confession and rejected his argument." Because Thompson could not satisfy *Strickland*'s prejudice prong, the appellate court concluded that his post-conviction petition was properly dismissed.

The Illinois Appellate Court correctly identified *Strickland* as the governing standard, and therefore the only question is whether the court's application of the test was unreasonable. 28 U.S.C. § 2254(d)(1). As the Seventh Circuit recently observed, satisfying the *Strickland* standard is a difficult task, and "establishing on habeas review that a state court unreasonably applied *Strickland* under § 2254(d) is all the more difficult." *Morgan v. Hardy*, 662 F.3d 790 (7th Cir. 2011); *see McNary*, 708 F.3d at 914 (*Strickland* and AEDPA combine to form "doubly deferential" standard of review; *Steffes v. Pollard*, 663 F.3d 276, 282 (7th Cir. 2011) (giving

deference under AEDPA to state court's prejudice determination under *Strickland*). The Court discerns nothing unreasonable about the appellate court's application of *Strickland* to Thompson's claim.

The appellate court reasonably concluded that in light of the overwhelming evidence of guilt, Thompson could not satisfy the prejudice prong as a matter of law. The appellate court considered all of the evidence presented at trial—including witness testimony, forensic analysis, and a videotaped confession—and found nothing to suggest the outcome would have been different had Thompson been called to testify. *See Battaglia*, 458 F.3d at 618-19 (counsel's failure to allow the defendant to testify was not prejudicial, because testimony regarding his mental state during the crime would not have been sufficient to reduce the charge to second-degree murder). Thompson offers no argument why this conclusion was unreasonable, nor does he answer the obvious question of how asserting self-defense would have been consistent with his defense that he was provoked by "mutual combat." The state court's conclusion that Thompson could not establish prejudice as a matter of law was not an unreasonable application of *Strickland*, and therefore his ineffective-assistance argument fails.

Implicit in this conclusion is the determination that Thompson has not shown that he is entitled to the evidentiary hearing that he also requests. As noted above, he did not develop the factual basis of his claim in state court, and none of the conditions in 28 U.S.C. § 2254(e)(2) apply to warrant further evidentiary proceedings. In particular, even if a hearing would show that the facts regarding his desire to testify are exactly as Thompson alleges them, they would not be "sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." *Id*. § 2254(e)(2)(B).

## IV. Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, this Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A state prisoner is required to obtain a certificate of appealability (from either the district court or from the appellate court) before the court of appeals has jurisdiction to rule on the merit of habeas appeals. 28 U.S.C. § 2253(c)(1); *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003). A certificate should issue when "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to satisfy this standard, "[a] prisoner must show that reasonable jurists would find the district court's assessment of the constitutional claim and any antecedent procedural rulings debatable or wrong." *Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011); *see Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, Thompson cannot make a substantial showing of the denial of a constitutional right, as it is not fairly debatable that the state court's determination that sufficient evidence supported the trial judge's finding of first degree murder and the appellate court reasonably applied *Strickland* to Thompson's ineffective-assistance claim, insofar as he alleged that he was precluded from testifying. Nor is there reason to conclude that it is fairly debatable whether Thompson failed to exhaust numerous claims and presented non-cognizable claims raising matters of state law. Therefore, the Court declines to enter a certificate of appealability.

* * *

For the reasons stated above, the Court denies Thompson's petition for writ of habeas corpus and declines to issue a certificate of appealability.[7]

---

[7] The Court grants Thompson's motion to add authority [Dkt # 35], which is more in the way of a supplemental brief, and has considered those arguments and authorities in ruling on the petition.

Date: October 17, 2013

John J. Tharp, Jr.
United States District Judge